REGAN, Judge.
Plaintiff, Southern Specialty Sales Company, instituted this suit, against defendant, Theodore Ainsworth, endeavoring to recover the sum of $342.98, representing the balance due on a Rototiller Field Mower (and accessories which were purchased subsequent to the sale), sold to the defendant, on June 40th, 1948, which was secured by vendor’s lien and privilege, together *334 with legal interest thereon from judicial demand until paid and recognition of its vendor’s lien and privilege.
Defendant answered admitting the purchase of the Rototiller and accessories and the payment of $390.64 on account of the purchase price thereof, but denied that he owed plaintiff a balance of $342.98. He then reconvened and maintained that the sale should be rescinded and declared a nullity on the following grounds:
(a) “The said sale and contract was induced by the false and fraudulent misrepresentations * * * contained in oral statements made to defendant by representatives of the plaintiff and in certain sales literature furnished to defendant by plaintiff in order to induce his purchase.”
(b) “That the sale and contract upon which suit is based was conditioned upon the ability of the said equipment to plow defendant’s soil, the said ability being a condition of the said sale and contract, which condition has remained wholly unfulfilled.”
(c) “That the said equipment was sold and offered for sale for the purpose of plowing defendant’s ground, and that the said equipment is incapable of so plowing defendant’s ground, wherefore defendant respectfully alleges that the said equipment is affected with a redhibitory vice.”
Defendant prayed for judgment in re-convention in the amount of $390.64, together with interest at the legal rate from the date of the respective monthly installments paid by him.
After a trial on the merits there was judgment dismissing plaintiff’s suit and in favor of the defendant on his reconven-tional demand in the sum of $390.64, “together with legal interest from date of the respective monthly installments paid by defendant * * * to the date of repayment thereof, cancelling and erasing the sale” and for all costs. From this judgment plaintiff prosecutes this appeal.
In this Court, plaintiff filed an exception of no cause or right of action to the re-conventional demand, setting forth that the said action of redhibition prescribed within one year from the date of the sale; and that the allegations of the reconventional demand “fail to show that plaintiff was placed in default or that tender of the equipment was promptly made.”
We shall first discuss the plea of prescription which was principally leveled at defendant’s contention in reconvention that the Rototiller was affected by redhibitory vices and defects. If the defendant, in his reconventional demand, had only endeavored to set aside this sale on the ground that the . equipment contained redhibitory vices and defects, obviously the exception would have to be maintained since the reconven-tional demand was filed by the defendant after more than one year had elapsed from the date of the sale of the tractor, however, the defendant in recónvention has also insisted that the said contract should be rescinded and annulled on the ground that the sale and contract was induced by false and fraudulent misrepresentations; and that the sale and contract upon which this suit is founded was conditioned upon the ability of the Rototiller to plow defendant’s tract of land, which condition has remained wholly unfulfilled. The action of rescission is not prescribed one year from the date of sale.
The record reveals that the defendant, without previous solicitation, called the office of the plaintiff company on March 10th, 1948, and made inquiry relative to the purchase of a Rototiller, which is a five horsepower garden tractor. In pursuance of this inquiry a sale’s representative called on the defendant and furnished him facts and literature extolling the virtues of a Rototiller and which was to the effect that the tractor would plow a small tract of “virgin” land owned by the defendant in Harahan. Relying both on the salesman’s recommendations and the literature furnished him, defendant purchased the tractor on June 10th, 1948, without a demonstration, and it was delivered to him the following day in Harahan, Louisiana, for the price of $714. Defendant subsequently purchased accessories for the Rototiller, making the total price thereof $733.62. Under the contract to purchase, defendant paid $214 cash and the balance was to be paid in monthly installments of $44.16. *335 Defendant made two payments, the first on August 27th, '1948, in the sum of $88.32, and the second on October 26th, 1948, in the amount of $88.32, which payments covered four installments, leaving a balance due of $342.88.
After delivery of the tractor in Harahan, plaintiff’s salesman and defendant endeavored to plow a portion of defendant’s land and discovered that the Rototiller was apparently incapable of performing this function. The salesman insisted that the ground was too hard due to the lack of rain and induced the defendant to retain possession of the tractor for a future trial after rain had assisted in softening the earth. About three or four months later, when it was determined that sufficient rain had fallen defendant attempted to plow a portion of his land with the Rototiller, which additional effort proved unsuccessful. Thereupon defendant visited plaintiff’s business establishment and complained to the cashier, who incidentally had received the two previous payments made on account of the purchase price of the tractor, and she referred him to the shop foreman, who ■furnished defendant with a different set of tines to use which, in his opinion, would materially assist the tractor in performing more satisfactorily.
During the ensuing weekend, defendant attached the new tines to the tractor and then attempted to plow a portion of the land. The result was the same as he had experienced on other occasions. He then returned to plaintiff’s office and again complained to the cashier, requesting that plaintiff accept the return of the machine and his account .credited with the payments made to date. She referred him to the superintendent, who informed defendant that he could only accept return of the machine on a trade-in, in which event he could not allow him as much as he had already paid on account. Defendant was unimpressed and refused to solve his problems in this manner.
Several months later, in February, 1949, defendant engaged a farmer to plow his tract of land and thereafter tried to use the Rototiller over the plowed ground and he discovered that even under the most favorable conditions, the tractor failed to perform satisfactorily. Finally, on October 13th, 1949, defendant, in response to a collection letter, telephoned plaintiff’s attorney and, in the course of the conversation which ensued, the attorney asked if he sent a demonstrator who could make the tractor work, would defendant pay for it. Defendant readily acquiesced and, on the following Friday, a Mr. Foley, one of plaintiff’s salesmen, endeavored unsuccessfully, in the presence of witnesses, to cause the tractor to plow a portion of defendant’s land. Thereafter, defendant phoned plaintiff’s attorney and this time he was informed that the best the plaintiff could do would be to take the machine back and call it square. This offer was summarily rejected by defendant. Thereupon plaintiff instituted this suit and the tractor was seized under a writ of sequestration. After consummating a trial of the case on its merits, defendant’s attorney agreed, without prejudice, to permit the plaintiff to have custody of the machine in order to minimize costs.
Plaintiff insists that the defendant made no complaint relative to the unsuccessful operation of the machine in question until approximately sixteen months after the sale was consummated. However, we find as a fact, that the defendant complained of the unsuccessful operation of the machine on numerous occasions between the date of the sale and the filing of the suit. To enumerate, defendant complained at the time of delivery to the salesman who demonstrated the tractor and who induced defendant to retain the machine for trial after sufficient rain had fallen to soften the earth. Defendant complained immediately after the unsuccessful trial of the machine which occurred following the rain, which was about four months after the sale. Defendant again complained to both the cashier and superintefident after the installation of the new tines, which had been suggested by the shop foreman, did not facilitate the machine in performing satisfactorily. Defendant, at this time, offered the machine to plaintiff and requested that his account be credited with payments made to date. In our opinion, this constituted *336 a tender of the machine to plaintiff. Defendant complained to plaintiff’s attorney-after he had received a collection letter from him and agreed to pay the balance of the purchase price if the tractor could be made to accomplish the purpose for which it was sold. After another unsuccessful trial of the tractor, defendant again complained to plaintiff’s attorney and he was informed, on this occasion, that the best plaintiff could do would be to accept the return of the machine and call the whole thing square, which offer defendant refused to accept.
Mr. Rowley, a partner in the plaintiff company, testified that he had never received any complaints directly or indirectly from the defendant, however, the record successfully refutes this statement for it does reveal that Foley, a representative of the plaintiff company, admitted that he went to defendant’s house on October 24th, 1949, to ascertain what defenadnt’s complaints were and that, in conformity with these complaints, he wrote a memorandum to Mr. Rowley, as follows:—
“The tractor will not plow.
“His story is that it was Not Demonstrated. That the salesman left it there; saying the ground was too hard for plowing. He has two sets tines; explained pur. second set when he complained to us that tractor would not plow (which indicated was at store for this purpose).
“Claims he has paid over 1/2 his bill, and as far as us not being able to locate him, he said we had only to inquire at Harahan City Hall — My opinion is that he will have to be taken to court — unless some one makes the tractor Work. One of his neighbors was there when I visited. He is in accord with Ainsworth—
“It does not appear as if he has raised any garden in past.
“I do not know what you expected me to do — it will take some one who knows Rototiller Well to arrive at a conclusion.
(Signed) E. Foley.”
The foregoing memorandum is a corroboration of almost all that the defendant has maintained and is in direct contradiction to plaintiff’s declaration that “plowing was never talked of”; “that no complaints were made”; “that payments were made without objection”; and “that he did not complain to the shop manager and receive new tines -for trial.”
A casual reading of the literature furnished by plaintiff’s representative to defendant in connection with this sale reveals other interesting contradictions of the position assumed by plaintiff in connection with this litigation.
“It supplants the old-fashioned method of pipwing, discing and harrowing.”
“You can work ground that often cannot be worked by ordinary methods.”
“Rototiller is also excellent for preparing new ground for stock.”
“With Rototiller, you can garden the easy way, completely eliminating the need for plow, disc and harrow.”
“Proof that Rototiller is profitable equipment is evidenced by the number of commercial growers and big scale producers who are now using one or more of these machines. They realize the savings in time, manpower and equipment costs obtained by using one implement to perform better work than plow, disc, harrow and cultivator combined.”
We are of the opinion that the Roto-tillcr which was sold to the defendant by plaintiff was wholly unfit for the purpose for which it was intended and that it did not function in conformity with the literature which was furnished defendant prior to the sale and, therefore, defendant is entitled to a rescission of the contract and to recover payments made on account thereof, however, with interest thereon only from judicial demand until paid.
For the reasons assigned the judgment appealed from is amended so as to read as follows:—
It is ordered, adjudged and decreed that there he judgment herein in favor of defendant, Theodore Ainsworth, dismissing plaintiff’s suit at its cost.
It is further ordered, adjudged and decreed that there be judgment herein in favor of defendant and plaintiff in recon-vention, Theodore Ainsworth, and against *337 plaintiff and defendant in reconvention, Southern Specialty Sales Company, in the full sum of $390.64 with interest from the date of judicial demand, and cancelling and erasing the sale of the Rototiller and Field Mower which was confected on June 10th, 1948, together with the sale of the accessories which were purchased subsequent to the said sale.
It is further ordered, adjudged and decreed that the Rototiller bearing Serial No. 103579, together with Field Mower, tines designated as #3 LH and #3 RH, straight type Pittman arm for B1-7RS, and snap rings be restored to the full control, custody and ownership of the plaintiff herein, Southern Specialty Sales Company.
The judgment as thus amended is affirmed.
Amended and affirmed.